UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

United States of America,
    (Plaintiff),

v.

CASE NO. 1:03-CR-29
Judge Sena J. McLaughlin

Corey Rosendary
    (Defendant).

POST CONVICTION RELIEF MEMORANDUM OF LAW
IN SUPPORT OF REDUCTION OF SENTENCE BELOW
THE MANDATORY MINIMUM

Now this 10th day of April, 2008. Comes the defendant named above. The defendant presents to this Honorable Court a supplemental brief in support of his post conviction relief.

The defendant hereby submits a question to the court

FILED
APR 14 2008
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

1.   Do the intentions of Congress remain clear to justify the 100 - 1 ratio of crack to powder cocaine in the mandatory minimum sentence of the statute, and by remaining silent to the passage of Amendments 706, 711 and 712 of the U.S.Sentencing Guidelines (USSG), has Congress created ambiguity, qualifying the Rule of Lenity?

Printed here is a question that brings genuine concern to the clarity of Congress' intent to maintain a mandatory minimum in the statute relative to crack cocaine.

A.   As far back as 1995, then again in 1997 and 2002, the US Sentencing Commission ("Commission") has recommended the sentencing disparity be adjusted, and even eliminated to some extent. The Commission has several times sought to achieve a reduction in the crack/powder ratio. In 1995, it proposed amendments to the USSG that would have replaced the 100 - 1 ratio with a 1 - 1 ratio. Complementing that change, the Commission would have installed special enhancements for trafficking offenses involving weapons or bodily injury. See amendments to the Sentencing Guidelines for United States Courts, 60 Fed Reg. 25075-25077 (1995). Congress, acting pursuant to 28 USC § 994(p), <u>rejected the amendment</u>. See Pub. L104-38, §1, 109 Stat 334. Simultaneously, however, Congress directed the Commission to "propose revisions to the drug quantity ratio of crack cocaine to powder cocaine under the relevant statutes and guidelines."

In response to this directive, the Commission issued reports in 1997 and 2002, recommending that Congress change the 100 - 1 ration prescribed in the 1986 Act. The 1997 report proposed a 5 - 1 ratio. See USSG, Special Report to Congress: Cocaine and Federal Sentencing Policy 2 (April 1997) http://www.ussc.gov/r_congress/newcrack.pdf.

The 2002 Report recommended the ratio be reduced "at least to 20 - 1." 2002 Report viii. "Neither report prompted Congressional action." (**Kimbrough v. United States** 169 L.Ed 2d 481,493 (2007).

B.  Now again in 2007, the Commission offers a report with a proposal known as Amendment 706, to which Congress does not exercise its right in Title 28 §994(p) to modify or disapprove. "Drawing meaning from silence is particularly inappropriate here, for Congress has shown that it knows how to direct sentencing practices in express terms." **Kimbrough v US** 160 L.Ed 2d 481,495

C.  The point in itself is enough to establish confusion towards the current status of Congress' position. There is, however, more to support the presence of amiguity. The Supreme Court further identifies these findings: "the Guidelines now advance a powder/crack ratio that varies (at different offense levels) between 25 - 1 and 80 - 1.  See Amendments to the Sentencing Guidelines for the United States Courts, 72 Fed Reg. 28571 - 28572. Adopting the Government's analysis, the amended Guidelines would conflict with Congress' 1995 action, and with the 1986 Act, because the current Guideline ratio deviates from the 100 - 1 statutory ratio. Congress, however, did not disapprove or modify the Commission-initiated 2007 amendment. Ordinarily, we resist reading Congressional intent into Congressional inaction. See **Bob Jones Univ. v United States**, 461 US 574, 600, 103 S.Ct 2017, 76 L.Ed 2d 157 (1983). But in this case, Congress failed to act on a proposed amendment to the Guidelines in a high profile area in which it had previously exercised its disapproval authority under 28 USC § 994(p). If nothing else, this tacit acceptance of the 2007 amendment undermines the Government's position, which itself is based on implications drawn from Congressional silence." **Kimbrough v US** 169 L.Ed 2d 481,497-498

(3)

Specifically, by requiring the Commission to recommend a "revision of the drug quantity ratio of crack to powder cocaine" and by not disapproving or modifying the Commission-initiated 2007 amendment, "Congress tacitly accepted" the allowance for deviation from the 100 - 1 ratio.

D.   Then the statutes themselves, both 21 USC § 841 and 960, as created by Congress, interpreted by Justices Stevens and Marshall in their dissenting opinions: "the consequences of the majority's construction of 21 USC § 841 [21 USCS § 841] are so bizarre that I cannot believe they were intended by Congress. Neither the ambiguous language of the statute, nor its sparse legislative history supports the interpretation reached by the majority today. Indeed, the majority's construction of the statute will necessarily produce sentences that are so anomalous that they will undermine the very uniformity Congress sought to achieve when it authorized the Sentencing Guidelines." Chapman v United States 500 US 453, 114 L.Ed 2d 524, 540, 111 S.Ct.1919.

E.   As recently as 2005, there are divisions in the Circuit Courts on how to interpret the statute 21 USC § 841. " A lingering and stratified split on a matter of such importance to the administration of criminal justice surely warrants the attention of Congress or the Supreme Court." US v Edwards 397 F 3d 570, 577 (7th Cir. 2005)

With these points the defendant has established ambiguity concerning the crack/powder ratio.

2. Does the fact Congress has imposed a mandatory minimum sentence in the statute undermine congressional confidence in the Sentencing Commission?

With this question the defendant points to the ambiguity Congress created in forming the Commission.

A. Congress enacted Title 28 § 991, the US Sentencing Commission establishment and purposes. Part (a) describes the makeup of the Commission, the next part (b) are the purposes of the Commission. Specifically to:

(1) establish sentencing policies and practices for the Federal criminal justice system that -

(A) assure the meeting of the purpose of sentencing as set forth in section 3553(a)(2) of Title 18, United States Code;

(B) provide certainty and fairness in meeting the purpose of sentencing, avoiding unwanted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and

(C) reflect, to the extent practiable, advancement in knowledge of human behavior as it relates to the criminal jsutice process; and

(2) develop means of measuring the degree to which sentencing, penal, and correctional practices are effective in meeting the purposes set forth in section 3553(a)(2) or Title 18, United States Code.

(5)

This statute is followed by Title 28 § 994, which defines the duties of the Commission, in part (a) "pursuant to its rules and regulations and consistent with all pertinent provisions of ANY Federal statute shall promulgate and distribute to all courts of the United States and the United States Probation system."

Congress also enacted Title 18 § 3553, Imposition of a Sentence; (a) "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

B. Congress empowered this Commission and created these statutes to provide a fair, reasonable and credible system to administer sentencing by the courts. "Further, the presumption [of reasonableness] reflects the nature of the Guidelines-writing task that Congress set for the Commission and the manner in which the Commission carried out that task. In instructing both sentencing judge and the Commission what to do, Congress referred to these basic sentencing objectives that the statute sets forth in 18 USC § 3553(a) (2000 ed. and Supp. IV). That provision tells sentencing judges to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aim of sentencing, namely: (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; (7) the need for restitution. The provisions tell the sentencing judge to "impose a sentence sufficient, but not greater than necessary to comply with the basic aims of sentencing as set out above."

Congressional statutes then tell the Commission to write Guidelines that will carry out these same §3553(a) objectives. Thus 28 USC § 991 (b) indicates that one of the Commission's basic objectives is to "assure the meeting of the purposes of sentencing as set forth in [§3553(a)(2)]." The provision adds that the Commission must seek to "provide certainty and fairness" in sentencing "to avoid unwarranted sentencing disparities." **Rita v United States** 168 L.Ed 2d 203,212.

C. Clearly the Supreme Court has shown that Congress created statutes to apply for sentencing, a Commision to oversee these statutes and determine fair and just sentences, along with statutes that provide rules the Commission must abide by to carry out that mission.

Congress should not be mandating sentences when Congress enacted a Commission to administer the sentencing process. This duality could be interpreted as a lack of confidence in either statutes that mandate sentences, or a lack of confidence in the Commission itself, putting into question the existence of a fair and reasonable process.

D. There is a clear example of ambiguity and lack of confidence directly overshadowing the statutes regulating the Commission and the mandatory sentences relative to crack cocaine in Title 21 USC § 841 and § 960.

The Commission Report to Congress, dated May 8, 2007 states: "the ratio Congress embedded in the statute" far overstates both "the relative harmfulness" of crack cocaine, and the "seriousness of most crack cocaine offenses." **Kimbrough** 169 L.Ed 2d 481, 492

(7)

Kimbrough further states: "The sentencing differential fosters disrespect for and a lack of confidence in the criminal justice system because of a widely held perception that it promotes unwarranted disparity based on race. Id at 492, 493

The defendant has presented questions and provided legal authority to support and qualify the Rule of Lenity.

"When choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." **US v Bass** 404 US 336, 338; 30 L.Ed 2d 488, 496; 92 S.Ct 515.

" One of the tools of statutory construction which the Supreme Court has developed to assist it in ascertaining congressional intent in the enactment of criminal statutes is the rule known as the Rule of Lenity." **Perrin v United States** "Rule of Lenity" 62 L.Ed 2d 827, 828

"A type of case to which the rule of lenity has been applied by the Supreme Court is that in which there is a question in regard to the severity of the punishment Congress has authorized for particular criminal activity." Id at 829

"The rule may also be applied if Congress has left unclear whether one or another of two possible alternate sentences was to be applied." Id at 829

E. These specific arguments above support and qualify the Rule of Lenity. Defendant will now bring attention to the Government's argument that ambiguity does not exist; that Congress is specific in its meaning and intent as related to clauses (ii) and (iii) in Title 21 USC § 841 and 960.

The defendant points to **US v Fisher** 58 F. 3d 96 (4th Cir. 1995). "If we were to read clause (ii) to include cocaine base because cocaine base is pure cocaine, we would of necessity have to conclude that there were no purpose for including clause (iii) in the statute since that clause also addresses cocaine base. In order to give a rational purpose to clause (iii), we must conclude that the statute's explicit reference in clause (iii) to cocaine base indicates an intent to address separately the trafficking of cocaine base, and, because of its more destructive nature, to impose a heavier penalty for violations involving that substance. When interpreting a statute, rules of statutory construction require that we give meaning to all statutory provisions, and seek an interpretation that permits us to read them with consistency. See US v **Nordic Village, Inc** 503 US 30,36; 112 S.Ct. 1011; 117 L.Ed 2d 181 (1992). Thus, reading clause (ii) and clause (iii) together, we can only conclude that the purpose of clause (ii) is to carve out a heavier penalty for the particularly harmful form of cocaine known as "crack" or "cocaine base." And, if clause (iii) isolates crack cocaine for special treatment, it is illogical then to read clause (ii) also to include crack cocaine. Thus the only rational interpretation that we can give this statute as a whole is to conclude that clause (ii) addresses cocaine powder and other forms of cocaine identified therein, except for "crack" cocaine, which is addressed separately in clause (iii). See generally **US v Katz** 271 US 354, 362; 46 S.Ct. 513, 516; 70 L.Ed 986 (1926)" US v **Fisher** 58 F.3d 96,99 (4th Cir. 1995)

To use this argument now, specifically the term: "particularly harmful form" which clearly states the "purpose of clause (iii)" represents broad disinformation, given the most recent data available as noted in **Kimbrough**. This new data updates the theories that were used to justify the disparity held in § 841 and § 960, and those theories are now proven and confirmed as inaccurate.

This leads us to the next question of law:

3.   Is the 100 - 1 ratio mandatory minimum set forth in 21 USC § 841 and § 960 a violation of Constitutional amendments 5 and 14's right to due process and equal protection?

In order to answer this question, the court needs to look at why Congress felt the disparity was valid and warranted. Turning to the Supreme Court: "Crack cocaine was a relatively new drug when the 1986 Act was signed into law, but it was already a matter of great public concern. Drug abuse in general, and crack cocaine in particular, had become, in public opinion and in members' minds a problem of overwhelming dimensions." **1995 Report 121** Congress apparently believed that crack was significantly more dangerous than powder cocaine in that: (1) crack was highly addictive; (2) crack users and dealers were more likely to be violent than users and dealers of other drugs; (3) crack was more harmful to users than powder, particularly to children who had been exposed to their mother's drug use during pregnancy; (4) crack was particularly prevalent among teenagers; and (5) crack's potency and low cost were making it increasingly popular. See **2002 Report 90.**

(10)

B. "Based on these assumptions, the 1986 Act adopted a "100 to 1 ratio" that treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine. The Act's five year mandatory minimum applies to any defendant accountable for 5 grams of crack or 500 grams of powder, 21 USC § 841(b)(1)(B)(ii), (iii); its ten year mandatory minimum applies to any defendant accountable for 50 grams of crack or 5000 grams of powder, 21 USC § 841(b)(1)(A)(ii),(iii)." **Kimbrough** 169 L.Ed 2d 481, 491

C. "Congress' 1995 action required the Commission to recommend a "revision of the drug quantity ratio of crack cocaine to powder." **Id at 497**

D. "the 100 to 1 ratio rested on assumptions about the harmfulness of the two drugs and the relative prevalence of a certain harmful conduct associated with their use and distribution that more recent data no longer support." **Id at 492**

E. "[The] ratio Congress embedded in the statute far "overstate[s]" both "the relative harmfulness" of crack cocaine and the "seriousness of most crack cocaine offenses"... "crack is associated with "significantly less trafficking violence...than previously assumed." "It also observed the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure. The Commission furthermore noted that the "epidemic of crack cocaine use by youth never materialized to the extent feared." **Id at 492**

(11)

F. "The Commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers. Id at 492

G. "The 100 to 1 ratio can lead to the "anomalous" result that "retail crack dealers get longer sentences than wholesale drug distributors who supply them the powder cocaine from which their crack is produced." Id at 492

H. "Furthermore, the court alluded to the Sentencing Commission's report criticizing the 100 to 1 ratio of § 3553(a)(5) (Supp. V), noting that the Commission "recognizes that crack cocaine has not caused the damage that the Justice Department alleges it has." Id at 500

In 1986 Congress intended to head off an epidemic it believed to be in the making. But as we see, it "never materialized." But, since 1986, tens of thousands of defendants have been sentenced to "disproportionately harsh sentences" that are "greater than necessary." Id at 500, based on assumption and possibility. Now that 22 years have passed since the 1986 Act, and the theories, assumptions and possibilities of the Act have been proven invalid, the defendant asks this court to recognize the facts as they are.

"If the legislative history is read as suggesting that Congress intended to raise the penalties on the form of cocaine base produced by reaction with baking soda, the court would be compelled to invalidate the clause (iii) penalty provisions on an equal protection theory. So far as this court can determine, there is no rational basis for having heightened penalties for cocaine or cocaine base derived only by one means of manufacture, when it

is clear beyond all doubt that all forms of cocaine are equally smokable and therefore, equally dangerous and where it appears that several forms of cocaine have in fact been abused in this country." **US v Davis** 864 F.Supp. 1303, 1309 (N.Ga. 1994)

"The Fifth Amendment has been interpreted to imply an equal protection component forbidding discrimination which is "so unjustifiable as to be violative of due process." **Bolling v Sharpe** 347 US 497, 499; 74 S.Ct. 693, 694; 98 L.Ed.884 (1954). The Supreme Court has approached Fifth Amendment equal protection claims in precisely the same manner in which it has approached equal protection claims under the Fourteenth Amendment." **Wienberger v Wiesenfeld** 420 US 636, 638n 2; 95 S.Ct. 1225, 1228n 2; 43 L.Ed 2d 514 (1975) (See footnote 25 **Id at 1309**)

By forcing the 100 - 1 ratio upon defendants with mandatory minimums and allowing for deviations from that ratio to all other defendants, equal protection rights have been violated.

In closing, the defendant leaves this court with these final quotes:

"The Government emphasizes that Congress required the Commission to propose changes to the 100 to 1 ratio in both the 1986 Act and the Guidelines. This requirement, the Government contends, implicitly foreclosed any deviation from the 100 to 1 ratio in the Guidelines (or by sentencing courts) in the absence of corresponding changes in the statute. See Brief for the United States 35-36

"But it does not follow, as the night follows the day that, by calling for recommendations to change the statute, Congress meant to bar any Guideline al-

(13)

terations in advance of congressional action. The more likely reading is that Congress sought proposals to amend both the statute and the Guidelines because of the Commission's criticisms of the 100 to 1 ratio, see Part II-B, supra, concerned the exorbitance of the crack/powder disparity in both contexts. **Kimbrough** 169 L.Ed 2d 481, 497

"Our duty, to paraphrase Mr Justice Holmes in a conversation with Judge Learned Hand, is not to do justice, but to apply the law and hope justice is done." **The Spirit of Liberty: Papers and Addresses of Learned Hand** 306-307 (Dilliard ed. 1960) **US v Davis** 864 F.Supp. 1303, 1309 (N.D. Ga. 1994)

Wherefore, in light of the Supreme Court's new ruling and opinion in **Kimbrough**, ambiguity has been established sufficient to invoke the rule of lenity, and the basis for which Congress established the ratio which determines mandatory minimum sentences for crack cocaine versus powder cocaine has been completely undermined in its rationale, as to implicate equal protection rights. Given these determinations as supported by case law above the mandatory minimum sentences prescribed in Title 21 USC § 841 and § 960 for cocaine base are unconstitutional and any sentence imposed thereupon should be reconsidered. In the interest of justice and fairness, no person should be subjected to a severely flawed disparity of sentence universally now determined to be unwarranted by all conscientious persons.

Respectfully Submitted

/S/ *Corey Rosendary*

Corey Rosendary
FCI Elton
PO Box 10
Lisbon Ohio 44432-0010

CERTIFICATE OF SERVICE

I, Corey Rosendary, hereby certify that a true and exact copy of the foregoing has this 10th day of April, 2008, been served on the United States District Attorney of the Western District of Pennsylvania by placing said motion in the prisoner legal mail box at FCI Elkton, Ohio. (Clerk of the Court: Please mail a copy of this motion to all concerned parties; Defendant is incarcerated and unable to obtain the proper addresses for service.

*/s/ Corey Rosendary*
Corey Rosendary